UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:16-CR-00125-RLJ |
| | ) | |
| vs. | ) | |
| | ) | |
| TIMOTHY L RUTHERFORD, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to 28 U.S.C. § 636 and standing orders of the District Court for a Report and Recommendation on Defendant Timothy L. Rutherford's ("Rutherford's") Motion to Suppress the electronic devices seized on February 5, 2016 and February 6, 2017 from the motel room in which he was staying [Doc. 18]. The Government has filed its response in opposition [Doc. 28]. On July 20, 2017, the Court conducted an evidentiary hearing on the motion. The motion hearing was continued and concluded on July 27, 2017. For the reasons stated, the Court recommends the Motion be DENIED.

**I.    BACKGROUND**

Rutherford is charged with enticement of a minor in violation of 18 U.S.C. § 2422(b) and interstate travel by an unregistered convicted sex offender and commission of a crime of violence in violation of 18 U.S.C. §§ 2250(a) and (d) [Doc. 1, *Indictment*]. On February 5, 2016, a deputy U.S. Marshal arrested Rutherford at the Budget Inn and placed him in the local sheriff's patrol car. Moments later, Rutherford's wife arrived and invited the deputy into her motel room. After explaining the situation to her, the deputy asked her about the three electronic devices sitting on the table next to the door. She voluntarily turned them over. The next day, on February 6, 2016,

1

she called the local sheriff's office and invited them back to her motel room to search it after she discovered a Wal-Mart receipt and prepaid phone card. The officers returned and searched her room and found three additional cellphones in the nightstand. Those were seized. Rutherford argues that law enforcement seized this devices unconstitutionally and requests the Court suppress the evidence found on them.

## II. FINDINGS OF FACT

At the evidentiary hearing, the following witnesses testified: Deputy U.S. Marshal Rachel St. Clair Moore ("Deputy Moore"), Tiffany Pendarvis, ("Pendarvis"), Rutherford's wife, Fairfax County, Virginia police detective Jeremy Hoffman, Trooper Jeffrey Mullins of the Virginia State Police, Lieutenant ("Lt.") Daniel Taylor of the Putnam County (Florida) Sheriff's Department, and Rutherford. Based on the testimony from the hearing, the Court makes the following findings of fact.

In July 2014, Rutherford was required to register in Washington County, Virginia as a sex offender under Virginia law as he had been convicted of enticement of a minor, a felony sex offense. See Va. Code 9.1-901 *et seq.* On August 15, 2014, after Rutherford failed to register in July, Virginia State Police Trooper Jeffrey Mullins obtained a warrant for Rutherford's arrest for failing to register as a sex offender. (Exhibit 15).

On August 5, 2014, Detective Jeremy Hoffman, with the Fairfax County Police Department, opened an investigation into a potential sexual predator. Hoffman, posing as a 13 year old girl, entered an internet chat room and began receiving messages from a "Kelly15" who represented herself as a 15 year old girl in Abingdon, Virginia. They then began using Yahoo! Messenger to communicate. Hoffman started receiving messages from "PlainGrl6060" who represented herself as "Kelly15" from the other chat room. "PlainGrl6060" began to send

Hoffman sexually explicit material and advised him that her "uncle" wanted to chat with her. At that point, Hoffman began receiving daily messages from "FlyGuy6060." "Flyguy6060" believing that Hoffman was a teenage girl, arranged to meet her in Fairfax on August 26, 2014. That meeting fell through and "Flyguy6060" stopped communicating with Hoffman. On September 8, 2014, the picture associated with "Flyguy6060" changed to Rutherford's face. Hoffman subpoenaed the records from Yahoo! which disclosed the phone number associated with that account. The number came back to Rutherford. On that date, Hoffman obtained three warrants for the arrest of Rutherford in Fairfax County. He entered into NCIC a notation that if Rutherford is found that he wanted any electronic devices seized.

Rutherford met Tiffany Pendarvis online and married her on July 29, 2014 in Tennessee. Pendarvis had no idea of Rutherford's criminal history. She was a certified veterinary technician. Because of her job, they moved to Palatka, Florida and lived in a number of different campgrounds before settling in at the Budget Inn.

At Rutherford's behest, Pendarvis formed two corporations and obtained two credit cards in the company's name. She was the only one liable on the accounts. She rented and paid for the room using the corporate credit cards, her personal credit cards, and from her wages as a veterinary technician. Rutherford did not rent the room and did not pay for the room.

On February 5, 2016, Deputy U.S. Marshal Moore, who works with fugitive warrants, went to the Budget Inn in Palatka, Florida, to follow up on a lead that Rutherford was staying there. She spoke with the clerk at the front desk, who was familiar with Rutherford's picture, but knew him by a different name. She confirmed that he was staying there. Officers with the Putnam County Sheriff's office arrived to assist Deputy Moore with taking Rutherford into custody.

Deputy Moore went out into the Budget Inn's parking lot and saw Rutherford standing in the doorway of his motel room with the door open. She arrested Rutherford and placed him in the back of a patrol officer's vehicle without incident. She did not speak with Rutherford at all about searching the motel room and neither did her partner.

Moments later, Pendarvis, Rutherford's soon to be estranged wife, arrived at the motel. Deputy Moore asked to speak with her about what was happening. Pendarvis invited Deputy Moore into the motel room to talk where she provided general background information about her relationship with Rutherford and how long they had been living at the Budget Inn. She had no idea about the trouble Rutherford had been in.

The patrolman then entered the room and advised the Marshal that NCIC had a note to seize any electronic devices found upon the arrest of Rutherford. Deputy Moore noticed a laptop, a Galaxy Edge cellphone and an iPhone on the table next to the door. She asked Pendarvis whether those devices were hers. Pendarvis said "They are all mine" and noted that she paid for all of them. Deputy Moore asked for her consent to seize them. Pendarvis agreed and signed a consent form turning over those devices to law enforcement.[1] Law enforcement left the motel and transported Rutherford to the local jail.

The next day, on February 6, 2016, when Pendarvis was packing to leave, she found a Wal-Mart receipt and a phone card in her belongings. This raised her suspicions so she called Putnam County Sheriff's office, advised them what she found, and invited them back to her room to actually search it. Law enforcement had not searched the room the day before. Officers arrived and searched the room at Pendarvis' invitation. During the search, officers found two standard

---

[1] The devices seized on February 5, 2016 contain no relevant information to the prosecution of this case.

Samsung cellphones and one standard U.S. Cellular cellphone in the nightstand next to the bed. She agreed that they could take the cell phones.

The six electronic devices were sent to Fairfax County and placed in an evidence safe for safe-keeping. Once the evidence arrived, Detective Hoffman prepared a search warrant and affidavit. In his affidavit, Detective Hoffman outlined his investigation and how he discovered Rutherford was the one he had been speaking with. Concerning the electronic devices, he provided the following:

> Your affiant knows based on training and experience that each of the [six] devices listed above are capable of conducting at least portions of the aforementioned communications, either by way of text messages, Yahoo Messenger, or email communications. Each of the devices is capable of storing images, text logs and data related to this investigation. Your Affiant also knows that even if images, texts, communications or other data pertaining to this investigation had been deleted from these devices that they may still be retrievable through forensic analysis. Your Affiant is familiar with the methods for restoring lost or deleted data and has had these methods successfully used in the course of previous investigations.
>
> Your Affiant believes the aforementioned devices contain evidence, artifacts, remnants and other indicia of the illicit and unlawful communications sent by Timothy Rutherford to what he had reason to believe was a 13 year old female. As communications are transferrable from one device to the other and email and chat clients can be accessed from multiple devices, your Affiant believes these devices contain evidence showing Timothy Rutherford was the person utilizing the aforementioned cellular phone number, Yahoo Messenger profile and email account.

[Doc. 24, pg. 9-10]. The local state magistrate authorized the search of the devices. Hoffman testified that the search of the laptop, the Galaxy Edge cellphone and the iPhone, (the items seized on February 5, 2016), revealed nothing relevant to the case before this Court. The other cellphones did.

In reviewing the search warrants, the Court finds that Hoffman did not make any material false statements nor did he omit any material information from the warrant that would have had any impact on whether the warrant would have been authorized.

Rutherford testified at the evidentiary hearing. He testified that he went inside his motel room and closed the door. When Deputy Moore knocked, he exited the room to speak with her and her partner when he was arrested. The manager, who was also present, closed the door behind him. Upon his arrest, he told Deputy Moore there was no need for them to enter the room because his arrest was their sole purpose in being there. After he was placed in the patrol vehicle, Rutherford testified that on two separate occasions Deputy Moore asked if he needed his glasses or his medication from the hotel room. Both times he informed her that he did not need those items or anything else from inside the room. Rutherford testified that he was held at the scene for over an hour and watched law enforcement follow Pendarvis into the hotel room to question her.

### III. ANALYSIS

In his motion, Rutherford argues Pendarvis lacked authority both to consent to a search of the motel room and to turn over the cellphones he alleges she presented to law enforcement on February 6, 2016. Even if she had authority, her consent was not valid because, he claims, when he was arrested at the motel room he "persisted in objecting [to] the search of the residence." He also contends that Pendarvis' "later seizure of [the cell phones] was also disallowable, without a warrant since [she] was acting as a government agent." [Doc. 19, pg. 5]. He then argues that even if she were not acting as an agent, the fact that she only later discovered the cell phones only proves his point that she did not know about the phones and thus had no authority over the items. He says law enforcement should have known that and obtained a warrant. Next, he finds fault with law enforcement sending the cell phones from Florida to Virginia for examination as a continued

6

seizure without a warrant. He also argues claims that "Virginia elicited a nationwide general exploratory 'scavenger hunt' for devices containing immense amounts of electronic data without first having obtaining a warrant for their seizure." [Doc. 19, pg. 9]. Finally, he claims the search warrant itself is faulty because "law enforcement withheld information that would help the Court determine the lawfulness of continuing to allow … [the] examination [of the cell phones.]" [Doc. 19, pg. 10].

### A. Pendarvis' consent

The first issue presented is the validity of Pendarvis' consent to search the room. Pendarvis is a third-party occupant of the motel room with Rutherford. The Fourth Amendment "recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects...." *Georgia v. Randolph*, 547 U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). The occupant, however, must "possess[] common authority over, or [have] other sufficient relationship to, the searched area." *United States v. Clay*, 630 F. App'x 377, 382 (6th Cir. 2015) (citing *United States v. Matlock*, 415 U.S. 164, 170-71 (1974); *see also Illinois v. Rodriguez*, 497 U.S. 177, 179, 181 (1990)). "The constitutional sufficiency of a co-tenant's consent to enter and search ... 'rests ... on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitant's has the right to permit the inspection in his own right ....'" *Georgia v. Randolph*, 547 U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).

Rutherford argues Pendarvis lacked authority to consent to a search of the motel room. But applying the standards set forth above, it is clear that she did. Pendarvis rented the room, not Rutherford. She paid for the room; Rutherford did not. In fact, Rutherford did not even help with

7

the rent as Pendarvis used her own funds, her own personal credit cards, and those of the two businesses. She had unfettered access to the room and had lived there for months prior to encountering Deputy Moore that day. Her "mutual use" of the room, her access and control over the room all demonstrate that it was reasonable to recognize she had the right to permit the search of the room. *Id.* Because she had authority to consent to a search of the room, law enforcement properly obtained all of the electronic devices.

Rutherford claims even if she had authority to consent, her consent was not valid because he objected on February 5, 2016, to the search of the motel room, citing *Georgia v. Randolph*, 547 U.S. 103 (2006). *Randolph* provides that "[e]ven with the consent of a person with common authority, however, the police generally may not enter when another occupant of the home is physically present and expressly refuses to permit entry." *Smith v. City of Wyoming*, 821 F.3d 697, 709 (6th Cir. 2016) (citing *Randolph*, 547 U.S. at 106).

His argument fails on two fronts. First, law enforcement did not search the motel room on February 5, 2016 when he was arrested. They searched on February 6th, the next day, at Pendarvis' invitation when Rutherford was not physically present. See *Fernandez v. California*, ___ U.S. ___, 134 S. Ct. 1126, 1134-36, 188 L.Ed. 2d 25 (2014) (consent to search given by co-occupant of apartment valid, even though defendant had previously objected to search at threshold of apartment, because co-occupant's consent was obtained when defendant was not physically present due to his subsequent lawful arrest). Second, Rutherford did not object in any event. Nothing he said to Deputy Moore was an objection to her searching the motel room. She did not ask to search the room. That he told Deputy Moore that they did not need to go inside his room because they obtained their goal of arresting him and that he did not need either medication or his glasses from inside did not involve his consent or refusal of consent to a search.

The next argument Rutherford makes is that his wife "acted as a government agent" when she authorized the search on February 6, 2016 [Doc. 15, pg. 5]. The argument is also not persuasive. To determine "whether a private party is acting as an agent of the government," thus implicating the Fourth Amendment, the Court examines: "(1) the government's knowledge or acquiescence to the search, and (2) the intent of the party performing the search." *United States v. Bowers*, 594 F.3d 522, 526 (6th Cir. 2010)(internal citations omitted).

In this case, on February 6, 2016, Pendarvis was simply collecting her belongings to move out of the motel. She was not searching for any evidence nor was law enforcement aware of her actions prior to her call to them, inviting them back to search her room. Once the officers arrived, Pendarvis gave them permission to search the room. At no point did anyone in law enforcement direct Pendarvis' actions nor did she conduct a search on their behalf. Law enforcement conducted the search, not Pendarvis. Accordingly, this claim is without merit.

Next he argues that because she did not disclose the phones on February 5, 2016, she did not know about them. If she did not know about them, the argument goes, then she could not have had any authority over them. This argument misses the point of consent. The issue is not whether she knew about the cell phones. The issue is whether she had authority to consent to a search of the motel room where the cell phones were found. Because the Court found she had that consent, law enforcement's search of the room and discovery of the phones was not unconstitutional.

Next he argues that Virginia put out an "exploratory scavenger hunt" for the cell phones which violated the Fourth Amendment. This argument is also without merit as the officers did not seize the cell phones without any basis. They seized them with Pendarvis' consent.

In light of Pendarvis' actual authority over the hotel room, Rutherford's arguments relating to the warrantless seizure are without merit. First, he asserts that the seizure of the first three items

9

cannot be legitimized as a search incident to arrest. This argument is without merit because the items were not seized incident to arrest. Next, he claims that that the plain view exception does not apply to the items' seizure because their incriminating nature would not have been apparent unless they were operating. A plain view doctrine analysis is not necessary in the instant matter because the officers gained control of the items by Pendarvis' consent. Finally, Rutherford asserts that the good faith exception cannot be used to legitimize the initial seizure because the officers did not have a search warrant justifying the seizure. The good faith exception rule is irrelevant to this case. As Pendarvis possessed the authority to consent to the search and the seizure of the items, Rutherford's arguments are without merit.

### B. Transportation of the Evidence

Next, Rutherford argues that the seizure of the electronic devices and their subsequent transportation from Florida to Virginia without a search warrant is a constitutional violation akin to *United States v. Kremen*, 353 U.S. 346 (1957). In *Kremen*, four individuals were arrested in a remote cabin after law enforcement surveilled them for 24 hours. *Id.* at 347. At the time of the arrests, only two of the defendants possessed outstanding arrest warrants. *Id.* After effecting the arrests, law enforcement conducted an exhaustive search of the cabin and seized its entire contents to send to California for a more extensive examination *without* obtaining a search warrant and without any consent. *Id.* Hundreds, if not over a thousand, items were seized and relocated to California. *Id.* at 348 (Appendix to the Opinion of the Court). The Court ruled that this behavior was unconstitutional and suppressed the seized evidence. *Id.*

Numerous factors distinguish this case from *Kremen*. In this case, law enforcement obtained the items seized with the consent of Pendarvis, who had authority to consent. The recovered items were then shipped immediately to Virginia— the prosecuting jurisdiction. The

items were not arbitrarily seized simply for additional examination. Moreover, within a week of obtaining the items, Hoffman procured a search warrant. No search occurred without proper authorization. Accordingly, the Court finds this argument to be baseless.

### C. Search Warrant

Finally, Defendant attacks the validity of the search warrant. He appears to attempt to raise a *Franks* challenge, arguing that material information was omitted from Detective Hoffman's affidavit. Defendant alleges that the affidavit fails to state how the initial three items were seized nor does it provide that the second set of items were produced by Pendarvis. He avers that this information was not included despite its necessity for the Court to "determine the lawfulness of continuing to allow [the items'] examination." [Doc. 19, pg. 10].

When a defendant challenges the sufficiency of a search warrant based on the supporting affidavit, he may be entitled to a *Franks* hearing. *See United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). A *Franks* hearing may be necessary in the case of either a material omission or the inclusion of false statements in a search warrant affidavit. *Id.* A defendant alleging a material omission is entitled to a hearing only if

> (1) the defendant makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit, and (2) a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it.

*Id.* (citing *United States v. Atkin*, 107 F.3d 1213, 1216-17 (6th Cir. 1997)).

The Sixth Circuit has "repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *Id.* (citing *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001)). The higher standard is necessary because of the "'potential for endless rounds of *Franks* hearings' due to potentially 'endless conjecture about investigative leads, fragments of information, or other matter

11

that might, if included, have redounded to defendant's benefit.'" *Id.* (quoting *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990)).

In the instant matter, Hoffman's affidavit specified exactly how all of the items were seized. The affidavit provides as follows:

> At the time of [Rutherford's] arrest, deputies with the Putnam County Sheriff's Office seized numerous cellular phones and an HP Pavilion laptop computer in his possession or control. His wife later provided additional cellular phones to deputies that she located in his night stand. These items were seized and later shipped to Fairfax County.

[Doc. 24, pg. 9]. Although it was established at the evidentiary hearing that Pendarvis consented to the seizure of the first three items after Rutherford's arrest and the second three were discovered pursuant to a consensual search by Putnam County officers, Hoffman testified that the details in his affidavit were based on the information he was provided by Putnam County. While they do differ, these differences are not material to the question of probable cause nor do they constitute a material omission. As established *supra*, the seizure of these items was lawful. He relayed the facts in his affidavit as he understood them. Rutherford has presented no evidence to the contrary. Accordingly, the Court finds that Defendant has not carried his burden to establish an entitlement to a *Franks* hearing. This claim is without merit.

## IV. CONCLUSION

Based on the foregoing reasons, the Court respectfully RECOMMENDS that Defendant's motion to suppress [Doc. 18] be DENIED.[2]

                                              Respectfully submitted,

                                              s/Clifton L. Corker
                                              United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).