UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:16-CR-125 |
| ) | |
| TIMOTHY LYNN RUTHERFORD ) | |

## **MEMORANDUM AND ORDER**

The defendant is charged with enticement of a minor, in violation of 18 U.S.C. § 2422(b), and commission of a crime of violence during interstate travel by an unregistered sex offender, in violation of 18 U.S.C. §§ 2250(a) and (d). He has filed a motion to suppress all evidence that was seized from his motel room residence on February 5 and 6, 2016. [Doc. 18]. The United States has responded in opposition to the motion. [Doc. 28].

The defendant has also moved for severance of the two charges against him. [Doc. 26]. The United States has again responded in opposition. [Doc. 29].

United States Magistrate Judge Clifton Corker conducted an evidentiary hearing and heard arguments on July 20 and 27, 2017. Now before the court is the magistrate judge's August 18, 2017 report and recommendation ("R&R"), recommending that the defendant's suppression motion be denied. [Doc. 37]. Also before the court is the magistrate judge's order denying severance. [Doc. 38].

The defendant has filed objections to the R&R and has appealed the severance ruling. [Docs. 39, 40]. The United States has again responded in opposition. [Docs. 41, 42]. The court has thoroughly reviewed the R&R, the defendant's motions, the parties' briefing, the transcript of the evidentiary hearings, and the various exhibits. For the reasons that follow, the defendant's R&R objections will be overruled and the severance ruling will be affirmed.

I.

*Motion to Suppress*

A. Background

The R&R sufficiently sets forth the pertinent facts. Those facts need not be repeated herein.

B. Standard of Review

The defendant's objections, covering slightly more than two pages, seek *de novo* review of the entire suppression motion. [Doc. 40, p.3]. In so doing, the defendant misapprehends the applicable standard of review.

It is true that a district court is both statutorily and constitutionally required to conduct a *de novo* review of a magistrate judge's report and recommendation. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." *See id.*; 28 U.S.C. § 636(b). A district court need not provide *de novo* review where objections to a report and

recommendation are frivolous, conclusive, or general. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

C. <u>Analysis</u>

The defendant's R&R objections pertain to three cellphones seized by law enforcement officers on February 6, 2016, the day after the defendant was taken into custody. In the R&R, the magistrate judge found that the defendant's wife, Tiffany Pendarvis, "called the local sheriff's office and invited them back to her motel room to search it after she discovered a Wal-Mart receipt and prepaid phone card. The officers returned and searched her room and found three additional cellphones in the nightstand. Those were seized." [Doc. 37, p.2]. The magistrate judge later expounded on that finding.

> Moments later [on February 5, after the defendant had been arrested and placed in a patrol car], Pendarvis, Rutherford's soon to be estranged wife, arrived at the motel. Deputy Moore asked to speak with her about what was happening. Pendarvis invited Deputy Moore into the motel room to talk where she provided general background information about her relationship with Rutherford and how long they had been living at the Budget Inn. She had no idea about the trouble Rutherford had been in.
>
> The patrolman then entered the room and advised the Marshal that NCIC had a note to seize any electronic devices found upon the arrest of Rutherford. Deputy Moore noticed a laptop, a Galaxy Edge cellphone and an iPhone on the table next to the door. She asked Pendarvis whether those devices were hers. Pendarvis said "They are all mine" and noted that she paid for all of them. Deputy Moore asked for her consent to seize them. Pendarvis agreed and signed a consent form turning over those devices to law enforcement. Law enforcement left the motel and transported Rutherford to the local jail.

3

> The next day, on February 6, 2016, when Pendarvis was packing to leave, she found a Wal-Mart receipt and a phone card in her belongings. This raised her suspicion so she call Putnam County Sheriff's office, advised them what she found, and invited them back to her room to actually search it. Law enforcement had not searched the room the day before. Officers arrived and searched the room at Pendarvis' invitation. During the search, officers found two standard Samsung cellphones and one standard U.S. Cellular cellphone in the nightstand next to the bed. She agreed that they could take the cell phones.
>
> . . .
>
> [Subsequently, a Virginia] state magistrate authorized the search of the devices. Hoffman [Fairfax County, Virginia, Detective Jeremy Hoffman] testified that the search of the laptop, the Galaxy Edge cellphone and the iPhone, (the items seized on February 5, 2016), revealed nothing relevant to the case before this Court. The other cellphones did.

*Id.* p. 4-5 (footnote omitted). The magistrate judge went on to note the defendant's contention that it was actually Pendarvis herself who searched the room and found the three incriminating cellphones while acting as an agent of the government. *Id.* p.6.

The defendant's R&R objections focus on contradictory evidence as to whether it was Pendarvis or law enforcement who located the second set of phones. That conflict, according to the defendant, renders Pendarvis an unbelievable witness, thus undermining and rendering erroneous the magistrate judge's conclusion that Pendarvis was not acting as a private government agent. The defendant also objects that law enforcement could not lawfully take those phones from his nightstand without a "seizure warrant." Lastly, the defendant objects (NCIC notation notwithstanding) that the phones were not "appreciabl[y] illegal[]" and thus should never have been taken for

4

what he deems "an inter-jurisdictional fishing expedition on the basis of a law enforcement courtesy call."

The defendant is indeed correct that there is conflicting evidence as to whether it was law enforcement or Pendarvis herself who first located the three cellphones on February 6. At the July 20 evidentiary hearing, Pendarvis testified that she was "packing up my stuff and getting rid of all his [defendant's] stuff because I didn't want to see it and no longer wanted it." [Doc. 36, p.61]. In that process, Pendarvis came across the phone card and the Wal-Mart receipt and, according to her testimony, then "called the Sheriff's Department and had them come to the room, and I surrendered that [the phone card and receipt] over to them and also gave them permission to search the room for other probable evidence." *Id.* p.61, 85. Pendarvis testified that it was then officers who found the three incriminating phones in a nightstand next to the bed. *Id.* p. 61, 93-94.

However, Pendarvis also twice acknowledged that she in fact could not remember whether it was she or law enforcement who first found the phones. *Id.* p. 62, 81. Additionally, both the contemporaneous Supplemental Offense Report of Officer Michael Locastro and the February 19, 2016 Affidavit in Support of Search Warrant by Detective Hoffman state that it was Pendarvis who first found the phones, in the nightstand on the defendant's side of the couple's shared bed. [Doc. 31, ex. 5; Doc. 24, p.9].

The court considers these discrepancies to be immaterial. The court has reviewed Pendarvis' testimony and finds her to be a credible witness (as, obviously, did the magistrate judge). The court specifically credits Pendarvis' testimony that on February 6, 2016, she was "[r]eally shaken up," having just learned that her husband was a convicted sex offender under investigation for additional sex-related crimes. [Doc. 36 p. 62]. The court sees no evidence to support the conclusion that the discrepancies in Pendarvis' testimony are the result of anything other than a genuine inability to recall every detail of an undoubtedly stressful day.

Presuming that it was indeed Pendarvis who first located the incriminating phones on February 6, the court nonetheless agrees with the magistrate judge that Pendarvis was not acting as an agent of the government when she located the phones. The Sixth Circuit

> uses a two-factor analysis in determining whether a private party is acting as an agent of the government such that the Fourth Amendment applies. Those two factors require an analysis of (1) the government's knowledge or acquiescence to the search, and (2) the intent of the party performing the search. If *the intent of the private party* conducting the search *is entirely independent* of the government's intent to collect evidence for use in a criminal prosecution, then the private party is not an agent of the government.

*United States v. Bowers*, 594 F.3d 522, 525-26 (6th Cir. 2010) (emphases in original) (citations and quotations omitted).

In this case, the testimony is consistent that no officer asked Pendarvis to conduct a search of the motel room or had prior knowledge of any such search, and the court

6

credits that testimony. [Doc. 36, p.25-27, 64, 175]. Additionally, the court finds that Pendarvis' intentions were entirely independent of the government's desire to collect evidence. She was going through the motel room to pack, and/or dispose of, its contents. As such, if it was Pendarvis who first found the cellphones on February 6, she was not acting as an agent of the government, and the Fourth Amendment is therefore not implicated. *Bowers*, 594 F.3d at 525-26.

If instead it was the officers who conducted the search that led to the discovery and seizure of the three incriminating phones, no "seizure warrant" was needed because Pendarvis consented to the search. The magistrate judge correctly concluded that Pendarvis had authority to consent to the search of a motel room that she had occupied for several months and for which she paid the rent. *See generally Fernandez v. California*, 134 S. Ct. 1126, 1134-36 (2014). The defendant's unsupported contention that Pendarvis' authority could not extend to the "looting" of "his" nightstand is unpersuasive. There is no evidence that the defendant had secured the nightstand or made efforts to exclude Pendarvis' access to it. *See United States v. Groves*, 530 F.3d 506, 511 (7th Cir. 2008) (defendant had no privacy interest in "an unlocked, unmarked nightstand drawer in a room he shared with [his girlfriend]. Thus, [the girlfriend's] valid consent to a search of the apartment included consent to search the nightstands in the bedroom.").

Equally unpersuasive is the defendant's objection that officers had no authority to engage in an "inter-jurisdictional fishing expedition" for cellphones which had "no

7

appreciable illegality." Without citation to any supporting authority, the defendant appears to argue that the NCIC notation (to obtain all electronic devices) was unconstitutional in what he deems a simple failure to register investigation. The defendant misrepresents the record, as there were warrants for his arrest on cases beyond the mere failure to register. [Doc. 31, ex. 4]. In fact, the NCIC notation states in full, "Fairfax Co currently investigating subject for online sexual exploitation of a minor[.] Please have subjects [sic] cell phone and/or laptop taken into custody." [Doc. 34, ex. 17]. As such, this objection is frivolous, conclusive, and general, meriting no further discussion. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

For all these reasons, the R&R objections presented by the defendant will be overruled.

II.

*Severance*

In moving for a separate trial on each count of his indictment, the defendant argues that "the alleged offenses are not inherently of the same or similar character, based on the same act or transaction, or connected with or constitute parts of a common scheme or plan." The defendant further contends that he will suffer "substantial unfair prejudice" as to Count One (enticement of a minor) if the jury learns he is a convicted sex offender (a fact which is only an element of Count Two).

In his appeal of Magistrate Judge Corker's order, the defendant takes issue with the magistrate's partial reliance on *United States v. Slaughter*, 708 F.3d 1208 (7th Cir.

2013). Specifically, the defendant contends that the direct proof against him is not as overwhelming as it was against Slaughter. At this point, that is a speculative contention.

In any event, the defendant's appeal misses the main points of the magistrate judge's ruling. This case alleges two offenses committed in overlapping time period. Enticement of a minor will have to be proven on each count. Some of the same witnesses and proof will be required as to each count. For all these reasons, it would be a misuse of resources for this court to conduct two trials.

To be certain, juror knowledge of the defendant's prior sex offense conviction will be prejudicial. However, the court will address that prejudice by way of limiting instructions, and jurors are presumed to follow such instructions. *See, e.g., United States v. Ford*, 872 F.2d 1231, 1239 (6th Cir. 1989).

The magistrate judge's order denying severance correctly considers the facts of this case in light of the applicable law. The court adopts that order in full. The magistrate judge's denial of the defendant's severance motion was neither clearly erroneous nor contrary to law and will accordingly be affirmed. 28 U.S.C. § 636(b)(1).

III.

*Conclusion*

Finding itself in complete agreement with the magistrate judge, the court **ADOPTS** the findings of fact and conclusions of law set out in the report and

recommendation [doc. 37]. The defendant's objections to that R&R [doc. 40] are **OVERRULED** and his motion to suppress [doc. 18] is **DENIED**.

The defendant's appeal [doc. 39] of the magistrate judge's denial of his motion to sever is also **DENIED**.

This case remains set for trial on October 10, 2017. The plea deadline remains September 26, 2017.

    **IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge