UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:16-CR-125 |
| ) | |
| TIMOTHY LYNN RUTHERFORD ) | |

## MEMORANDUM AND ORDER

Now before the Court is the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i) [doc. 66], with briefs in support [docs. 67, 69]. The United States has responded in opposition. [Doc. 73]. Also before the Court is the defendant's motion for appointment of counsel. [Doc. 74]. For the reasons that follow, the defendant's motions will be denied.

## I. BACKGROUND

Less than three years ago, this Court sentenced the defendant to a term of 240 months' imprisonment, to be followed by a lifetime of supervised release, for attempted enticement of a minor and for failing to comply with SORNA's registration requirements. This case marked the defendant's second federal enticement conviction. [Doc. 50, ¶ 63].

The defendant is presently housed at FCI Petersburg Medium with a projected release date of August 20, 2033. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jan. 27, 2021). He now moves for compassionate release due to the COVID-19 pandemic, diabetes, hypertension, heart disease, obesity, and age (56). [Doc. 66, p. 1; doc. 67, p. 25]. The defendant argues that his sentence should be reduced to time served because he "faces odds of death that are near incalculable," because his continued

incarceration "is morally reprehensible," and because "[h]e is no threat to anyone." [Doc. 66, p. 1; doc. 67, p. 7, 15, 25].[1]

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

---

[1] The defendant also raises arguments pertaining to his conditions of confinement. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). There is no evidence that this defendant has exhausted his administrative remedies on those claims, nor is he incarcerated in this judicial district.

2

Case 2:16-cr-00125-RLJ-CRW Document 75 Filed 02/01/21 Page 2 of 9 PageID #: 966

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, ___ F.3d ___, 2021 WL 50169 (6th Cir. Jan. 6, 2021).[2] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 67, ex. 2]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, diabetes, hypertension, heart disease, obesity, and age (56). Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

3

arguments and the broader facts of this case in light of the pertinent § 3553(a) factors.

Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>>
>>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's correctional institution, there are currently 14 inmates and 12 staff positive for COVID-19, with 250 inmates and seven staff having recovered, with one inmate death. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 27, 2021). These numbers are not insignificant, but the Court simultaneously notes that outside the prison setting our nation remains in an increasingly dangerous crisis in terms of COVID diagnoses, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate

5

release[.]").

BOP medical records show that the defendant has heart disease, hypertension, and type 2 diabetes. [Doc. 67, ex. 2; doc. 73, ex. 2]. He is obese and a former smoker. [Doc. 67, ex. 2]. In February 2020, the defendant underwent cardiac catheterization, and "concerning" narrowing was noted. [*Id.*].

At present, coronary artery disease, type 2 diabetes, obesity, and history of smoking are considered to be factors which create an increased risk of severe illness from COVID-19, and the danger of COVID-related complications generally increases with age. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 27, 2021). Additionally, persons with hypertension might be at increased risk. [*Id.*].

The BOP's SENTRY Report shows that the defendant is categorized as Care Level 2. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Jan. 27, 2021).

Turning to the nature and circumstances of the instant offense and the defendant's history and characteristics, in this case he failed to update his sex offender registration in multiple states and attempted to entice what he thought was a 13-year-old girl to engage in sexual activity. [Presentence Investigation Report ("PSR"), doc. 50, ¶¶ 8-13]. A search of

6

the defendant's electronic devices showed that he tried to similarly entice at least four other teenagers, using a process that was "identical to the scheme" he used in his earlier federal enticement offense. [*Id.*, ¶¶ 22-23]. In that prior case, the defendant successfully convinced a 15-year-old girl to engage in sexual intercourse and he "similarly groomed four other teenage girls for sexual intercourse during the same time frame." [*Id.*, ¶ 63]. His predatory conduct in that case was beyond egregious. [*Id.*].

Other prior convictions include numerous bad check offenses, credit card fraud, four DUIs, making false statements in connection with federal supervised release, failure to register as a sex offender, assault and battery of a family member, violation of a protective order, and two instances of being a felon in possession of firearms. [*Id.*, ¶¶ 52-62, 64-69]. There has been a host of warrants issued for failures to comply with court requirements and conditions of probation. [*Id.*, ¶¶ 53-61, 63-64, 67, 71].

At the time of sentencing in this case, the defendant suffered from hypertension, heart problems, back and shoulder pain, obesity, and abnormal glucose. [*Id.*, ¶¶ 83-85]. Those conditions plainly had no deterrent effect on his criminal conduct in this case.

The SENTRY Report shows that during his current term of imprisonment the defendant is employed, has taken some educational and vocational programming, and has thus far incurred no disciplinary sanctions. Those facts are appreciated. The BOP presently deems the defendant a medium security classification with a medium risk of recidivism.

The Court has considered the relevant § 3553(a) factors, the circumstances of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. The Court recognizes the defendant's age, health problems, and lack of disciplinary

7

infractions while incarcerated. However, these points are eclipsed by the defendant's conduct in this case and his criminal history which includes a similar prior conviction which left him undeterred. The Court further restates that neither age, obesity, hypertension, pre-diabetes, pain, or heart problems were sufficient to prevent the defendant's misconduct in the instant case. Additionally, his background is riddled with violent, predatory, and fraudulent misconduct, and he is plainly not amenable to supervision.

The requested compassionate release would result in a sentence similar in length to the one imposed for the prior enticement conviction which, again, clearly did nothing to deter the defendant from continuing to be a grave danger to the public. Compassionate release would not reflect the seriousness of the offense of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant. On the facts of this case, it is virtually impossible for the Court to envision a circumstance in which compassionate release would be warranted. On balance, there are not extraordinary and compelling reasons justifying the requested relief.

### III. APPOINTMENT OF COUNSEL

As for the defendant's request for appointment of an attorney, there is no constitutional right to counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of

8

justice so require." In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant. Moreover, pursuant to this court's Standing Order SO-19-04, Federal Defender Services of Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a *pro se* § 3582(c)(1)(A) motion. FDSET has chosen not to make an appearance regarding this defendant's compassionate release request.

## IV. CONCLUSION

As provided herein, the defendant's motions for compassionate release and for the appointment of counsel [docs. 66, 74] are **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge